[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, Care Manor of Farmington, is a nursing home located in the Town of Farmington, Connecticut. In July 1990 Rosetta Kelsey became a patient in said facility and remained there for approximately six months until she died on February 5, 1991. At the time of her death, the plaintiff was owed $15,444.47 for her care. It has sought payment from defendant Robert Tremblay, son of Rosetta Kelsey.
At trial plaintiff claimed that defendant should pay the entire amount owed because he was the "responsible party" for his mother. However, the plaintiff failed to prove that Robert Tremblay ever agreed to be financially responsible for his mother's bills. He did not sign the patient care contract (defendant's Exhibit A), nor did he ever sign any statement guaranteeing payment.
For several years Rosetta Kelsey had had a savings account in a Connecticut bank in the approximate amount of $13,000. About a year before she entered the convalescent home, she arranged to put defendant's name on the account, and they thus became joint owners of the account. In April of 1990, three months prior to Rosetta Kelsey's entering Care Manor, defendant transferred the account out to California where he lives. Inasmuch as this was done several months before Rosetta Kelsey became a patient at Care Manor, there was no intent on the part of the defendant to defraud the plaintiff (as alleged in the complaint).
The issue before the court is whether the plaintiff is now entitled to payment for its outstanding bill from the funds which were held in that joint account. The court believes the plaintiff is entitled to one-half those funds minus $1,600, the asset limit, and minus $3,600, the amount CT Page 4431 allowed for a funeral bill (in accordance with Department of Income Maintenance Guidelines).
There was much correspondence and communication back and forth between the parties concerning the ownership of the joint bank account which was out in California. The plaintiff was seeking information about the account so that it could arrange to get Title XIX assistance for Rosetta Kelsey. According to the Connecticut Department of Income Maintenance Uniform Policy Manual, "[p]ersonal property such as a bank account held jointly by the assistance unit (patient) and by another person is counted in full toward the asset limit" in determining an assistance unit's eligibility for Title XIX. This can be rebutted, however. The policy manual also provides: "If the assistance unit proves that it is merely the record owner of part or all of the assets, the Department counts only the portion of the asset legally owned by the assistance unit."
It would appear that there was a good deal of miscommunication between the parties in regard to this joint account, but the court does not believe that the defendant was uncooperative. (See plaintiff's Exhibits 7, 8, 10). In fact, he had been willing to supply to the plaintiff and/or the Department of Income Maintenance whatever information he was able to obtain for them in this regard. He refused, however, to forward any funds to the plaintiff until he received certain information from them. (Plaintiff's Exhibit 8).
At trial the defendant claimed that he was the sole owner of the funds in the joint account. The court disagrees. The court does believe, however, that the joint account was owned equally by his mother and himself. He testified that it had always been understood between them that the account belonged to both of them, that he had contributed money to his mother over the years, and that funds had been used by him for the benefit of his mother when he took trips from California to visit her. However, because the defendant refused to send any money from the joint account to help pay his mother's bills, the plaintiff was unable to obtain Title XIX payments on behalf of Rosetta Kelsey.
In light of the defendant's cooperation, and in light of the miscommunication of the parties, probably due to the distance between them, the Court finds that only a portion of CT Page 4432 the plaintiff's bill should be paid by the defendant, and that this should be paid only from the mother's one-half share of the joint account. As of December 18, 1990 the funds in the account were $13,451.10. Rosetta Kelsey's one-half interest would be $6,725.55. According to the plaintiff, she would have been allowed to keep $1,600, and she would have been allowed to set aside $3,600 for a funeral bill. Thus, from her share of the joint bank account, the plaintiff should receive $1,525.55.
Accordingly, judgment may enter for the plaintiff for $1,525.55. No costs to either party.
Allen, State Trial Referee